IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARY ANN SHOEMAKER and CLYDE SHOEMAKER, on behalf of themselves and all others similarly situated, | )<br>)<br>)<br>) |
| Plaintiffs, | ) C.A. No. 10-204<br>) |
| v. | ) |
| PAUL GERAGHTY, LEEANN BERGEY, BRENT PETERS, HAROLD HERR, JAMES WIMMER, STEPHANIE MITCHELL, THOMAS LEAMER, A. ROSS MYERS, JAMES MCERLANE, JOHN CUNNINGHAM, WALTER DALLER, DEMETRA TAKES, HARLEYSVILLE NATIONAL CORPORATION and FIRST NIAGARA FINANCIAL GROUP INC., | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

FILED
JAN 15 2010

**PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER**

Plaintiffs hereby move this Court for an Order enjoining Defendants from holding the scheduled January 22, 2010 shareholder meeting to approve the proposed merger (the "merger"0 between Harleysville National Corporation ("Harleysville") and First Niagara Financial group, Inc. ("First Niagara"), until Defendants fully disclose all material information, as set forth in the Memorandum of Law in Support of Plaintiffs' Motion for Temporary Restraining Order. Absent Court intervention, Plaintiffs will be required to vote on the Merger without the benefit of all requisite material information and, thus, irreparably injured.

For these reasons and as more fully addressed in the accompanying Memorandum of Law, the Court should grant Plaintiffs' Motion for Temporary Restraining Order.

Dated: January 15, 2010                    BRODSKY & SMITH LLC

                                           Jason L. Brodsky, Esquire
                                           Marc L. Ackerman, Esquire
                                           Two Bala Plaza, Suite 602
                                           Bala Cynwyd, PA 19004
                                           Tel: (610) 667-6200
                                           Fax: (610) 667-9029
                                           *Attorneys for Plaintiffs*

OF COUNSEL:                                OF COUNSEL:

RIGRODSKY & LONG, P.A.                     LEVI & KORSINSKY, LLP
Seth D. Rigrodsky, Esquire                 Joseph Levi, Esquire
Brian D. Long, Esquire                     W. Scott Holleman, Esquire
919 N. Market Street, Suite 980            30 Broad Street, 15th Floor
Wilmington, DE 19801                       New York, NY 10004
Tel: (302) 295-5310                        Tel: (212) 363-7500



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARY ANN SHOEMAKER and CLYDE SHOEMAKER, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> PAUL GERAGHTY, LEEANN BERGEY, BRENT PETERS, HAROLD HERR, JAMES WIMMER, STEPHANIE MITCHELL, THOMAS LEAMER, A. ROSS MYERS, JAMES MCERLANE, JOHN CUNNINGHAM, WALTER DALLER, DEMETRA TAKES, HARLEYSVILLE NATIONAL CORPORATION and FIRST NIAGARA FINANCIAL GROUP INC., <br><br> Defendants. | ) ) ) ) ) C.A. No. 10  204 ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

FILED JAN 15 2010

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR A TEMPORARY RESTRAINING ORDER**

BRODSKY & SMITH, LLC
Jason L. Brodsky, Esquire
Marc L. Ackerman, Esquire
Two Bala Plaza, Suite 602
Bala Cynwyd, PA 19004
Tel: (610) 667-6200

*Attorneys for Plaintiffs*

OF COUNSEL:
LEVI & KORSINSKY, LLP
Joseph Levi, Esquire
Scott Holleman, Esquire
30 Broad Street, 15th Floor
New York, NY 10004
Tel: (212) 363-7500

RIGRODSKY & LONG, P.A.
Seth D. Rigrodsky, Esquire
Brian D. Long, Esquire
919 N. Market Street, Suite 980
Wilmington, DE 19801
Tel: (302) 295-5310

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiffs respectfully submit this Memorandum of Law in support of their Motion for a Temporary Restraining Order, and respectfully asks this Court to prevent defendants from soliciting stockholder approval of a proposed merger transaction based on materially misleading disclosures in violation of Section 14(a) of the Securities Exchange Act of 1934 ("Section 14(a)").[1]

## INTRODUCTION

A temporary restraining order is necessary to protect shareholders' interests because the defendants are attempting to force an unfair merger upon the public stockholders of defendant Harleysville National Corporation ("Harleysville" or the "Company") through a materially misleading proxy statement, thereby depriving Plaintiffs and the entire class of Harleysville shareholders of their right to cast an informed vote on January 22, 2010. The Court should not countenance the defendants' misconduct, especially in light of the minimal burden that remedying such violations – briefly postponing the stockholder vote and ordering corrective disclosures – would impose on defendants.

The Company's board of directors (the "Board" or the "Individual Defendants") has violated Section 14(a) in connection with the proposed merger between Harleysville and First Niagara Financial Group, Inc. ("First Niagara") pursuant to which First Niagara will acquire all of the Company's outstanding common stock for 0.474 shares of First Niagara common stock for each share of Harleysville common stock and without adequate disclosure. Defendants have scheduled a special meeting of Harleysville stockholders for January 22, 2010, at which time they will ask the stockholders to approve the proposed transaction based on a materially misleading and inadequate disclosures, and in an informational vacuum that precludes stockholders' knowledge of defendants'

---

[1] Because Plaintiffs' principal claim arises under Federal law, and for the other reasons cited herein, this Court is vested with exclusive jurisdiction to determine plaintiff's Section 14(a) claim. *See infra* at Argument, § I.

2

conflicting personal motivations for approving the deal. Defendants intend to close the proposed transaction shortly after the stockholder vote.

As alleged in detail in the Complaint, the Schedule 14A Definitive Proxy Statement (the "Proxy" or the "Definitive Proxy"), filed by Harleysville on December 17, 2009, omits material information concerning the financial analyses supporting the proposed merger, the relationship with the financial advisor rendering the fairness opinion on the merger, the scope and nature of the sales process leading up to the announcement of the merger, and the strategic alternatives (if any) contemplated by Harleysville's Board prior to agreeing to merge with First Niagara. Disclosure of this and other information is absolutely necessary to enable Harleysville shareholders to make a fully informed decision concerning the proposed merger transaction, and a failure to disclose such material information constitutes a direct violation of Section 14(a).

## BACKGROUND AND PROCEDURAL POSTURE

### I.     The Proposed Transaction and Subsequent Procedural Posture

Harleysville is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with its principal corporate offices in Harleysville, Pennsylvania. The Company operates as the holding company for Harleysville National Bank and Trust Company, which provides banking and financial products and services to individual and corporate customers primarily in eastern Pennsylvania.

On July 26, 2009, Harleysville announced that it had entered into a merger agreement with First Niagara whereby First Niagara would acquire all of the outstanding shares of Harleysville in an all-stock transaction (0.474 shares of First Niagara common stock for each share of Harleysville common stock) worth approximately $237 million. However, various Company announcements, financial disclosures, and stock price estimates reveal that Harleysville is being sold for an inadequate price pursuant to a flawed process and that Defendants have failed to provide

Harleysville shareholders with sufficient information to be able to cast a fully informed vote on the proposed merger transaction.

On July 28, 2009, Plaintiff Victor Seibert filed suit against Harleysville, First Niagara, and members of Harleysville's Board in Pennsylvania state court, alleging that Defendants had breached their duties to the class of Harleysville shareholders by selling the Company pursuant to an unfair process for an unfair price and that Defendants further breached their fiduciary duties by failing to disclose to shareholders material information concerning the proposed transaction.[2]

On August 7, 2009, Plaintiffs in the *Seibert* and *Shoemaker* actions (later to be joined by Plaintiff in the *McAuvic* action) filed a Motion for Consolidation and Appointment of Lead Counsel.

On August 14, 2009, Plaintiffs in the *Shoemaker* action served discovery requests on all Defendants. On August 18, 2009, following a number of conversations regarding the scope and timing of the discovery requests, Plaintiffs in the *Shoemaker* and *Seibert* actions wrote to counsel for Harleysville to offer to enter into a discovery agreement whereby the parties would agree to an expedited, but more limited scope of production of documents, as well as a schedule for depositions.

On August 27, 2009, the Defendants filed a Cross Motion for Coordination, Transfer and Consolidation (the "Motion to Coordinate") to coordinate all seven pending Montgomery County and Philadelphia County actions in Montgomery County.[3]

The parties were unable to reach any agreement with respect to discovery, and, as a result, Defendants filed an Emergency Motion to Stay Proceedings or, in the Alternative, to Stay

---

[2] Thereafter, on July 30, 2009, Plaintiffs Mary Shoemaker and Clyde Shoemaker ("Shoemaker") filed a shareholder class action alleging breach of fiduciary duty against substantially the same Defendants. Similarly, on July 31, 2009, Plaintiff Michael McAuvic ("McAuvic") filed a shareholder class action alleging breach of fiduciary duty against substantially the same Defendants.

[3] In addition to the three (3) actions pending in Montgomery County, four (4) other actions were filed in the Court of Common Pleas for Philadelphia County. On December 31, 2009, one of the Philadelphia plaintiffs, Danny Valerius, filed an action in this Court (2:09-cv-06208-JS ). In the intervening two weeks, no other documents have been filed in

4

Discovery.

On September 10, 2009, the parties (including the plaintiffs in the four (4) actions filed in Philadelphia County) reached an agreement whereby the all actions would be stayed pending the Court's determination of Defendants' Cross-Motion On September 11, 2009, the Court issued the Order staying all proceedings (the "September 11th Order") (See Affidavit of Marc L. Ackerman ("Ackerman Aff."), Exhibit C.

On October 9, 2009, First Niagara filed a Form S-4 Registration Statement (the "Registration Statement") with the SEC in connection with the proposed transaction. After close review by Plaintiffs, Plaintiffs' counsel, and a financial expert retained by Plaintiffs' counsel, Plaintiffs determined that the Registration Statement contained numerous misrepresentations and/or omissions and failed to provide Harleysville's shareholders with all material information needed to cast an informed vote on the Proposed Transaction. However, based on the September 11th Order, Plaintiffs were not permitted to file an amended pleading.

Thereafter, on December 17, 2009, Defendants announced in a Schedule 14A Definitive Proxy Statement (the "Definitive Proxy") that the shareholder vote would occur at a special meeting of Harleysville shareholders on January 22, 2010, 10:30 a.m. E.S.T., at Best Western, The Inn at Towamencin, 1750 Sumneytown Pike, Kulpsville, Pennsylvania 19443. (A copy of the Definitive Proxy is attached to the Ackerman Aff. as Exhibit A.) To date, Defendants have failed to provide any curative disclosures to the misrepresentations and omissions set forth in the Registration Statement.

The Motion to Coordinate was scheduled for argument on January 7, 2010. However, on or about December 22, 2009, the Motion to Coordinate was taken off calendar by the Court and, to date, a new date has not been set.

---

that action.

On January 6, 2010, in light of the fact that the Motion to Coordinate had been taken off calendar and due to the pending January 22, 2010 shareholder vote, Plaintiffs filed an Emergency Motion to Lift Stay and for Expedited Proceedings ("Emergency Motion"). Argument was held on January 7, 2010. The Court denied the Emergency Motion without any opinion. Ackerman Aff., Exhibit D.

Based on the Montgomery County Court's failure to schedule the Motion to Coordinate and the denial of the Emergency Motion, Plaintiffs filed this Action.

## II.   The Definitive Proxy Is Misleading and Omits Material Facts

Pursuant to the merger agreement, First Niagara intends to purchase all of the outstanding shares of Harleysville common stock in an all-stock transaction whereby Harleysville shareholders will receive 0.474 shares of First Niagara common stock for each share of Harleysville common stock. (Compl. ¶ 2.) Harleysville's Board is recommending that all of the Company's shareholders vote in favor of the proposed merger, yet Defendants have violated Section 14(a) by failing to disclose all material information concerning the transaction.

First Niagara filed a deficient Registration Statement on October 9, 2009, which was, at least in part, the subject of the aforementioned proposed amended complaint. Instead of remedying these disclosure violations, Harleysville filed a similarly deficient Definitive Proxy with the SEC on December 17, 2009. (Compl. ¶ 2.) Specifically, the Definitive Proxy is deficient and violates Section 14(a) because it fails to disclose, *inter alia*:

(i)   The financial projections and forecasts provided to JPMorgan Securities, Inc. ("JPMorgan"), the Company's financial advisor, in rendering its fairness opinion as well as projections and forecasts derived by JPMorgan from other information given to JPMorgan;

(ii)  The criteria utilized by JPMorgan to select the companies, transactions, and multiples used in the *Selected Companies Analysis* for Harleysville and First Niagara, and the *Selected Transaction Analysis* for Harleysville;

6

(iii) The multiples observed for each company and transaction in the *Selected Companies Analysis* for Harleysville and First Niagara and the *Selected Transaction Analysis* for Harleysville;

(iv) The criteria used to select the growth ranges and multiple ranges, and additional loan loss provisions used by JPMorgan in its *Stand Alone Dividend Discount Analyses*;

(v) The assumptions and criteria used to calculate annual synergies of $15 million used in the *Pro Form Analysis*.

(vi) Information concerning the retention, compensation, and interests of JPMorgan, including (i) the criteria used for selecting JPMorgan, (ii) which other investment advisors (if any) were considered, and (iii) the amount of compensation received by JPMorgan for services performed to Harleysville and First Niagara in the past.

(vii) Information concerning the process and criteria JPMorgan utilized to identify potential partners and discussions and negotiations with such potential partners, including the criteria used to select potential acquirers, the value of the indications of interest received from private equity investors and financial institutions, the value of Investor X's indication of interest, why the Company did not negotiate with each of the three investors that comprised Investor X individually when each had submitted separate indications of interest, why the Company waited until July 2009 before authorizing JPMorgan to search for strategic partners, the extent of the discussions with the financial institution that proposed an offer with a high range that was 25% above First Niagara's offer, and information concerning the actions taken by management to "continue to pursue aggressively other available alternative transactions or potential acquirers;"

(viii) Information to evaluate the pros and cons associated with the other strategic alternatives, other than the sale of the Company, considered by the Company, including steps that were taken to pursue "executing potential asset sales, repositioning Harleysville National Corporation's balance sheet and restructuring funding sources;"

A complete list of the defendants' disclosure violations is contained in Plaintiffs' complaint in paragraphs 27 to 30. Without disclosure of this information—and without discovery for Plaintiffs to ascertain whether additional violations exist—Harleysville shareholders will be forced to decide whether to vote in favor of the merger, and forever lose their interest in the Company, on the basis of inadequate and misleading disclosures.

## III. Plaintiffs' Current Proxy Challenge Is Properly Before this Court

As set forth above, shortly after Defendants announced the proposed transaction, Plaintiffs and others respectively filed three lawsuits Pennsylvania state court in the Court of Common Pleas for Montgomery County challenging the deal. The plaintiffs in each of those three cases agreed to work together and attempted to negotiate with Defendants an order consolidating their cases and for an agreement on expedited discovery. Four other actions were filed in the Court of Common Pleas for Philadelphia County. By Order dated September 11, 2009, all seven (7) actions were stayed.

On January 6, 2010, the plaintiffs in the Montgomery County action (which had still not been consolidated) obtained a hearing on January 7, 2010 on the Emergency Motion to Lift Stay and to Expedite Proceedings. The state court judge refused to lift the stay and entered an order without further explanation. Given the fact that the Motion to Coordinate is not currently scheduled for argument, the court denied the Emergency Motion and the shareholder vote is scheduled for January 22, 2010, plaintiffs in Montgomery County are left without a meaningful way to prevent the impending irreparable harm that defendants' conduct will create.

Not content to sit and wait on events, Plaintiffs herein took alternative action to preserve their right to temporarily stop the stockholder vote on the deal and correct defendants' materially misleading disclosures. To do so, they filed in Federal court, asserted claims under Section 14(a) and immediately moved for this temporary restraining order upon the filing of the Complaint.

## ARGUMENT

I. **THIS COURT HAS EXCLUSIVE JURISDICTION OVER PLAINTIFFS' EXCHANGE ACT CLAIMS**

### A. This Court Has Exclusive Jurisdiction

Congress intended for federal courts to be "the exclusive venue" for securities class actions. *Rubery v. Radian Group, Inc.*, No. 07-1068, 2007 WL 1575211 (E.D. Pa. May 31, 2007). The Securities Litigation Uniform Standards Act of 1998 ("SLUSA") was passed to enforce the "congressional preference for 'national standards for securities class action lawsuits involving nationally traded securities.'" *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 126 S. Ct. 1503, 1514 (2006) (citing SLUSA § 2(5), 112 Stat. 3227 n.12). Federal class securities claims "must proceed in federal court if at all." *Id.* Section 27 of the Securities Exchange Act of 1934 vests exclusive jurisdiction for claims under that Act, including the claims here under Section 14(a), with United States District Courts. 15 U.S.C. § 78aa.

### B. Abstention and Comity Doctrines Do Not Apply

Defendants will likely assert that the Court should dismiss the Complaint because this action is within the scope of the *Colorado River* abstention doctrine. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). *Colorado River* and its progeny cite several factors a court must consider when evaluating whether to decline exercising jurisdiction, including: (1) whether either court has assumed jurisdiction over a *res*; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law controls; and (6) whether the state forum will adequately protect the interests of the parties. *Id.*

Although the Supreme Court held in *Colorado River* that "in situations involving the contemporaneous exercise of concurrent jurisdiction[] . . . by state and federal courts" it may be


appropriate for the federal court to defer to the state court, the Court emphasized that "the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention" and should be "*exceptional*" to justify deferral to the state court. *Id.* at 818[4]; *see also Izzo v. River Edge*, 843 F.2d 765 (3d Cir. 1988); *Bath Unlimited, Inc. v. Ginarte, O'Dwyer, Winograd & Laracuente*, Civil Action No. 04-03919 (KSH), 2005 U.S. Dist. LEXIS 22654, 2005 WL 2406097 (D.N.J. Sept. 29, 2005).

Accordingly, the Third Circuit has held, "[a]s *Colorado River* makes clear," that "abstention is the exception, not the rule, and is justified only in the exceptional circumstance where the order guiding the parties to the state court "would clearly serve an important countervailing interest." *Izzo*, 843 F.2d at 767. Pennsylvania district courts have adhered to the motto of "[a]bstention is the exception, and not the rule," *U.S. Claims, Inc. v. Smolar*, 574 F.Supp.2d 487, 489 (E.D. Pa., 2008), Courts have gone so far as to state that "federal courts have a virtually unflagging obligation to exercise the jurisdiction given them by Congress." *Ryan v. Johnson*, 115 F.3d 193, 195 (3d Cir. 1997) (internal citation and quotations omitted). Those extraordinary circumstances do not exist here, and the Court should not decline to exercise jurisdiction.

With respect to factors to be considered, as explained herein, this Court has unquestionable jurisdictional authority over the instant litigation. Moreover, the desire to avoid piecemeal litigation further supports Plaintiffs' opposition to abstention by this Court. This issue, in the context of this analysis, goes hand-in-hand with the factors as to "whether federal law or state law controls" and "whether the state forum will adequately protect the interests of the parties." The State and Federal Court actions, as a whole, represent (in essence) two fundamental claims: (1) the claim that

---

[4] All emphasis is added and all internal quotations are omitted throughout this Brief unless otherwise noted.