Defendants issued false or misleading disclosures in Proxy; and (2) the Defendants breached their fiduciary obligations to Harleysville's stockholders by failing to attain the best available value for the sale of the Company (the "valuation" claim). Both claims, in theory only, stem from the same activities by Defendants. The federal "proxy" claim, however, can only be presided over and decided by a Federal District Court. *See* 15 U.S.C. § 78aa. *See also Harris v. Pernsley*, 755 F.2d 338, 346 (3d Cir. 1985) ("The cases are not truly parallel since the federal court plaintiffs seek money damages while the state court plaintiffs did not.)

In effect, the instant action does not conflict with the piecemeal litigation factor. Rather, by asserting the "proxy" claim in Federal District Court, Plaintiffs effectuate the appropriate procedure for litigating this action. Therefore, federal court is the only forum that can adequately protect Plaintiffs' interests, as a state court *cannot* rule on Plaintiffs' "proxy claim."[5]

## II. THE COURT SHOULD ISSUE A TEMPORARY RESTRAINING ORDER POSTPONING THE SPECIAL STOCKHOLDER MEETING UNTIL DEFENDANTS MAKE THE NECESSARY CORRECTIVE DISCLOSURES.

The power to issue a temporary restraining order enables the court to preserve the status quo of the parties' pending final adjudication. *See Acierno v. New Castle County*, 40 F.3d 645, 647 (3d Cir. 1994); *see also Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (explaining that status quo refers to the "last, peaceable, noncontested status of the parties"). An applicant seeking a temporary restraining order must demonstrate "(1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest." *EUSA*

---

[5] Here, Defendants cannot conceivably show that the instant litigation implicates an "important state interest" and thus defendants cannot argue that the instant litigation constitutes an enjoinment of the pending state court action. *Younger v. Harris*, 401 U.S. 37 (1971). Despite the concern for state-federal comity addressed by *Younger* abstention, the "pendency of an action in the state court is no bar to proceedings concerning the same subject matter in the Federal court having jurisdiction." *Gwynedd Properties, Inc. v. Lower Gwynedd Twp*, 970 F.2d 1195, 1202 (3d Cir. 1992).

*Pharma (US), Inc. v. Innocoll Pharmaceuticals Ltd.*, 594 F. Supp. 2d 570, 578 (E.D. Pa. 2009) (quoting *Winter v. Natural Resources Defense Council, Inc.*, --- U.S. ----, 129 S.Ct. 365, 374-76 (2008)).

Here, injunctive relief is appropriate because Harleysville shareholders are being forced to vote on January 22, 2010 in reliance upon materially misleading and inadequate disclosures concerning various facets of the Proposed Transaction.

**A.    Plaintiffs Are Likely to Prevail on the Merits of Their Section 14(a) Claim**

Section 14(a) of the Exchange Act makes it a violation to violate SEC rules in connection with the solicitation of proxies.  15 U.S.C. § 78n(a).[6]  Correspondingly, Rule 14a-9 prohibits the solicitation of proxies by means of communications rendered misleading by a material misrepresentation or omission.  17 C.F.R. § 240.14a-9.[7]

Section 14(a) "stemmed from the congressional belief that fair corporate suffrage is an important right that should attach to every equity security bought on a public exchange." *J.I. Case Co. v. Borak*, 377 U.S. 426, 431 (1964); *see also TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 448 (1976) (explaining that the purpose of section 14(a) is full and fair corporate suffrage). The "provision was intended to promote the free exercise of the voting rights of stockholders by

---

[6] Section 78n(a) provides:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise in contravention of such rules and regulations as the Commission may prescribe as necessary and appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title [15 U.S.C. 78l].

[7] Rule 14a-9 provides in relevant part:

> (a) No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter

ensuring that proxies would be solicited with explanation to the stockholder of the real nature of the questions for which authority to cast his vote is sought." *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 381 (1970); *see also Mendell v. Greenberg,* 927 F.2d 667, 670 (2d Cir. 1991). Accordingly, "to prevent management or others from obtaining authorization for corporate action by means of deceptive or inadequate disclosure in proxy solicitation," Section 14(a) mandates that proxies be solicited with "explanation to the stockholder of the real nature of the questions for which authority to cast his vote is sought." *Mills,* 396 U.S. at 381 (citing S. Rep. No. 792, 73d Cong., 2d Sess., 12).

To prove a violation of Section 14(a), a plaintiff must show (1) that a proxy statement contained a material misrepresentation or omission, (2) that the plaintiff was injured by the material misrepresentation or omission, and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was "an essential link in the accomplishment of the transaction." *Mills,* 396 U.S. at 385; *Ash v. GAF Corp.,* 723 F.2d 1090, 1092-93 (3d Cir. 1983). In addition, the material misstatement or omission must be shown to have been the result of knowing, reckless, or negligent conduct. *Gould v. American-Hawaiian Steamship Co.,* 535 F.2d 761, 777-78 (3d Cir. 1976). The Supreme Court has defined "materiality" for purposes of Section 14(a) as follows:

> An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote. . . . It does not require proof of a substantial likelihood that disclosure of the omitted fact would have caused the reasonable investor to change his vote. What the standard does contemplate is a showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder. Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.

*TSC Indus.,* 426 U.S. at 449; *see also Landy v. Amsterdam,* 815 F.2d 925, 933 (3d Cir. 1987). However, any doubts concerning whether a given misrepresentation or omission is material should be "resolved in favor of those the statute is designed to protect," *i.e.,* the shareholders. *TSC Indus.,*

---

which has become false or misleading.

426 U.S. at 448 (citing *Mills*, 396 U.S. at 385 (1970)).

### 1.    Defendants Failed to Disclose All Material Information Concerning the Analyses Performed by JPMorgan, the Company's Financial Advisor

The opinion of Harleysville's financial advisor is perhaps the most important information that needs to be disclosed to shareholders in connection with the proposed transaction. However, Defendants failed to disclose various material details concerning the financial analysis performed by JPMorgan, Harleysville's financial advisor. As outlined more fully above and in Plaintiffs' Complaint, Defendants failed to disclose the projections and forecasts relied upon by JPMorgan in rendering its fairness opinion, the criteria used to select certain companies and transactions used to demonstrate the "fairness" of the Proposed Transaction, the multiples observed for each company in JPMorgan's analyses, the assumptions and criteria used to calculate the synergies expected from the proposed transaction, and various other information concerning JPMorgan's financial analyses. Without this information, shareholders will be unable to make an informed decision of whether to vote their shares.

A finding of materiality is supported by various decisions addressing disclosure claims in the context of other mergers and acquisitions. *See, e.g., In re Netsmart Technologies, Inc. S'holder Litig.*, 924 A.2d 171 (Del. Ch. 2007) (enjoining merger until curative disclosures were made and holding that "plaintiffs have also established a probability that the Proxy is materially incomplete because it fails to disclose the projections [the financial advisor] used to perform the discounted cash flow valuation supporting its fairness opinion"); *see also Burlington Indus., Inc. v. Edelman*, 666 F. Supp. 799 (M.D.N.C. 1987) (finding material information concerning sales figures and other internally produced information the bear on the company's growth prospects); *Erickson v. Centennial Beauregard Cellular LLC*, No. 19974, 2003 WL 1878583 (Del. Ch. Apr. 11, 2003) (finding information about the future business prospects of a company is necessary because "[s]tockholders are entitled to be paid for their proportionate interest in the company as a going

14

concern, rather than its liquidation value").

### 2.   Defendants Omitted Material Information Regarding the Selection, Retention, and Compensation of JPMorgan as Its Financial Advisor

The Proxy omits material information regarding the financial advisor retained in connection with the proposed transaction. Specifically, the Proxy states that JPMorgan was retained as the Company's financial advisor in the proposed transaction but fails to inform the shareholders the (i) criteria used for selecting JPMorgan, (ii) which other investment advisors (if any) were considered, and (iii) the amount of compensation received by JPMorgan for services performed to Harleysville and First Niagara in the past. It is material for shareholders to be informed as to why the Board selected JPMorgan as well as any other financial and economic interests JPMorgan or its clients have in the proposed transaction or in the parties involved that could be perceived or create a conflict of interest.

### 3.   Defendants Fail to Provide Shareholders with Adequate Information Regarding Other Strategic Alternatives

The Proxy fails to provide shareholders with sufficient information to evaluate the pros and cons associated with the other strategic alternatives, other than the sale of the Company, considered by the Company—information which is vital to shareholders in deciding how to vote regarding the proposed transaction. For example, the Definitive Proxy states that, on June 8, 2009, the Company announced strategic initiatives, including "executing potential asset sales, repositioning Harleysville National Corporation's balance sheet and restructuring funding sources," but it fails to disclose the steps undertaken, if any, to pursue such alternatives, and what was determined with respect to pursuing each alternative.

### B.   Plaintiffs and the Entire Class of Harleysville Shareholders Will Suffer Irreparable Harm in the Absence of a Temporary Restraining Order

Plaintiffs and the proposed class will suffer immediate, irreparable injury if deprived of the opportunity to make a fully informed decision regarding the proposed transaction. The Supreme

Court established over 35 years ago that a materially misleading solicitation of a stockholder vote constitutes irreparable injury sufficient to justify injunctive relief. *Mills*, 396 U.S. at 383; *Krauth v. Executive Telecard, Ltd.*, 890 F. Supp. 269, 287 (S.D.N.Y. 1995) ("Irreparable injury results from the use of false and misleading proxies when the free exercise of stockholders' voting rights will be frustrated."); *see also ODS Techs. LP v. Marshall*, 832 A.2d 1254, 1262 (Del. Ch. 2003) ("The threat of an uninformed stockholder vote constitutes irreparable harm."). Courts within this Circuit have not hesitated to enjoin transactions solicited through means of a materially misleading proxy. *Crouch v. Prior*, 905 F. Supp. 248, 260 (D.V.I. 1995); *Pennwalt Corp. v. Centaur Partners*, 710 F. Supp. 111, 117-18 (E.D. Pa. 1989); *Pabst Brewing Co. v. Kalmanovitz*, 551 F. Supp. 882, 895-96 (D. Del. 1982). Because Plaintiffs have shown that the deficiencies in the Proxy are material, he has established the threat of irreparable harm. *See Krauth*, 890 F. Supp. at 287.

Moreover, the irreparable injury caused by defendants' misleading proxy solicitations cannot by rectified by an action at law. Congress believed in enacting Section 14(a) that "[fair corporate suffrage is an important right that should attach to every equity security bought on a public exchange." *Borak*, 377 U.S. at 431. The Company's stockholders have no adequate remedy at law because they "would have been deprived of their statutory right to be free from deceptive proxy solicitations and their corresponding right to an informed vote" in the absence of injunctive relief. *Lichtenberg v. Besicorp Group, Inc.*, 43 F. Supp.2d 376, 391 (S.D.N.Y. 1999). Money damages cannot adequately compensate Plaintiffs and the class for the loss of this fundamental right. *Id.* at 392 (money damages for violation of Section 14(a) "would be less accurate, prompt, complete and efficient [than an injunction] - and thus inadequate").

**C.    The Balancing of Equities Weighs in Favor of Issuing a Temporary Restraining Order**

As demonstrated above, Plaintiffs will suffer serious irreparable harm in the absence of a temporary restraining order. If the Court does not temporarily enjoin the Proposed Transaction,

Plaintiffs—and the rest of Harleysville shareholders—will be forced to determine whether to sell the Company on the basis of materially misleading and inadequate information. Indeed, Harleysville shareholders stand to "suffer irreparable harm *of the highest order* if this "[C]ourt fails to grant injunctive relief." *Burlington Indus., Inc. v. Edelman*, 666 F. Supp. 799 (M.D.N.C. 1987) (emphasis added) (finding irreparable harm where company would cease to exist following consummation of tender offer); *see also In re MONY Group Inc. S'holder Litig*, 852 A.2d 9, 32 (Del. Ch. 2004) (discussing "the irreversible harm which would occur by permitting a stockholder vote on a merger to proceed without all material information necessary to make an informed decision"); *Netsmart*, 924 A.2d at 207-08 (Del. Ch. 2007) (explaining that irreparable harm typically found where stockholders forced to make an important decision with inadequate disclosures); *Mun. Police Employees' Ret. Sys. v. Crawford*, 918 A.2d 1172, 1192 (Del. Ch. 2007) (holding that "[s]hareholders would suffer irreparable harm [if they] were . . . forced to vote without knowledge of . . . material facts").

By contrast, "[w]hile the loss of an opportunity [to effectuate a tender offer] is an irreparable harm, the court, for several reasons, does not deem this harm to be of the magnitude of plaintiff's harm." *Id.* This is especially so in light of the fact that Defendants failed to disclose to shareholders all material information and are, thus, themselves responsible for any harm they might suffer.

If the Court does not grant the temporary restraining order, any stockholder vote will be tainted with misrepresentations and misleading information. The Defendants will face little to no hardship from this Court's entry of a temporary restraining order. As an initial matter, Defendants cannot claim that Plaintiffs waited too long. As discussed above, on December 17, 2009, Defendants announced in the Definitive Proxy that the shareholder vote would occur at a special meeting of Harleysville shareholders on January 22, 2010, 10:30 a.m. E.S.T., at Best Western, The

Inn at Towamencin, 1750 Sumneytown Pike, Kulpsville, Pennsylvania 19443. Significantly, the Proxy established that Defendants have failed to provide any curative disclosures to the misrepresentations and omissions in the Registration Statement.

Moreover, while the September 11, 2009 Order remained in effect, it was clear that the scheduling of the vote warranted the lifting of the stay of proceedings and necessitated expedited proceedings. To that end, on January 6, 2010, the court scheduled a hearing on the Emergency Motion. At the January 7th hearing, Plaintiffs advised the Court of the pending January 22, 2010 vote and the fact that the Montgomery County Court had failed to rule on the Motion to Coordinate and, in fact, had failed to even reschedule the hearing on the Motion to Coordinate. Nevertheless, by Order dated January 7, 2010, the Montgomery County Court refused to lift the September 11, 2010 Stay. In doing so, the Court all but guaranteed that the January 22, 2010 vote would take place prior to any resolution of the Motion to Coordinate or any substantive issue in the litigation. As such, Plaintiffs sought to litigate the 14(a) claim before this Court.

There is no harm to Defendants in maintaining the *status quo* while the Court orders corrective disclosure. Defendants will not face any monetary loss or hardship from a postponement in pursuing the Proposed Transaction. On the other hand, it is beyond cavil that Plaintiffs and the class should have the right to cast an informed vote whether to accept or reject this deal.

**D.    The Public Interest Favors Entry of a Temporary Restraining Order**

"As a practical matter, if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff." *AT&T Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994); *see also Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 730 (3d Cir. 2004).

Here, the public interest favors entry of the temporary restraining order, because Plaintiffs' goal and the public interest are one in the same: to fully apprise Harleysville's stockholders and

18

"honestly, openly and candidly state all the material facts." *Mendell*, 927 F.2d at 670; *See also Borak*, 377 U.S. at 431 (Section 14(a) "stemmed from the congressional belief that 'fair corporate suffrage is an important right that should attach to every equity security bought on a public exchange'"); *Mills*, 396 U.S. at 381 ("[Section 14(a)] was intended to promote "the free exercise of the voting rights of stockholders' by ensuring that proxies would be solicited with explanation to the stockholder of the real nature of the questions for which authority to cast his vote is sought.").

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully requests that the Court enter a restraining order (i) enjoining the January 22, 2010 shareholder vote; (ii) forbidding the distribution of false and misleading information to Harleysville's stockholders through the Proxy; and (iii) requiring Defendants to issue corrective disclosures.

Dated: January 15, 2010

BRODSKY & SMITH LLC

Jason L. Brodsky, Esquire
Marc L. Ackerman, Esquire
Two Bala Plaza, Suite 602
Bala Cynwyd, PA 19004
Tel: (610) 667-6200
Fax: (610) 667-9029
*Attorneys for Plaintiffs*

OF COUNSEL:

RIGRODSKY & LONG, P.A.
Seth D. Rigrodsky, Esquire
Brian D. Long, Esquire
919 N. Market Street, Suite 980
Wilmington, DE 19801
Tel: (302) 295-5310

OF COUNSEL:

LEVI & KORSINSKY, LLP
Joseph Levi, Esquire
W. Scott Holleman, Esquire
30 Broad Street, 15th Floor
New York, NY 10004
Tel: (212) 363-7500

19

## CERTIFICATE OF SERVICE

I, Marc L. Ackerman, hereby certify that I served Plaintiffs' Motion for Temporary Restraining Order, Memorandum of Law in Support thereof, Affidavit of Marc L. Ackerman, Proposed Order and Certificate of Service, via Federal Express (Saturday Delivery) upon the following:

DECHERT
Joseph Tate, Esquire
2929 Arch Street
Philadelphia, PA 19104
*Attorneys for Harleysville and All Individual Defendants*

HODGSON RUSS LLP
Ivan E. Lee. Esquire
The Guaranty Building
140 Pearl Street, Suite 100, Buffalo, NY 14202
*Attorneys for First Niagara*

Dated: January 15, 2010

_____
Marc L. Ackerman

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARY ANN SHOEMAKER and CLYDE SHOEMAKER, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | **CASE NO.** |
| v. | ) ) | **10    204** |
| PAUL GERAGHTY, LEEANN BERGEY, BRENT PETERS, HAROLD HERR, JAMES WIMMER,  STEPHANIE MITCHELL, THOMAS LEAMER, A. ROSS MYERS, JAMES MCERLANE, JOHN CUNNINGHAM, WALTER DALLER, DEMETRA TAKES, HARLEYSVILLE NATIONAL CORPORATION,  and FIRST NIAGARA FINANCIAL GROUP INC., | ) ) ) ) ) ) ) ) ) ) ) ) | **JURY TRIAL DEMANDED**<br><br><br>**FILED**<br><br>JAN 1 5 2010 |
| Defendants. | ) ) ) | By _____ /\ _____ Dep. Cler |

## AFFIDAVIT OF MARC L. ACKERMAN, ESQUIRE IN SUPPORT OF MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | ) |
| | ) ss. |
| COUNTY OF MONTGOMERY | ) |

I, Marc L. Ackerman, being duly sworn, do hereby state as follows:

1.     I am an attorney duly licensed to practice before the courts of the Commonwealth of Pennsylvania and a partner in the law firm of Brodsky & Smith, LLC ("Brodsky & Smith"). Brodsky & Smith is counsel for plaintiffs Mary Ann Shoemaker and Clyde Shoemaker in the above-captioned action.

2.      I submit this Affidavit in Support of Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for a Temporary Restraining Order.

3.      Attached hereto are true and correct copies of the following documents:

Exhibit A:      Definitive Proxy Statement on Schedule 14A filed with the United States Securities and Exchange Commission by Harleysville National Corporation on December 17, 2009, without attachments; and

Exhibit B:      Verified Class Action Complaint filed by Mary Ann Shoemaker and Clyde Shoemaker in the above-captioned action.

Exhibit C:      September 11, 2009 Order to Stay Proceedings

Exhibit D:      January 7, 2010 Order denying Emergency Motion to Lift Stay and for Expedited Proceedings and Discovery.

I make this Affidavit under penalty of perjury under the laws of the Commonwealth of Pennsylvania and the United States of America that the foregoing is true and correct.

Executed this 15th day of January 2010 in Bala Cynwyd, Pennsylvania.

Marc L. Ackerman

SWORN TO AND SUBSCRIBED
Before me this 15th day of January 2010.

Notary Public

My Commission Expires: _May 26, 2011_

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Joan M. Forsythe, Notary Public
Lower Merion Twp., Montgomery County
My Commission Expires May 26, 2011
Member, Pennsylvania Association of Notaries